JOSEPH VARANO'S CASE.

Suffolk.    February 9, 1956. — May 9, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Workmen's Compensation Act*, Procedure: findings by Industrial Accident Board, exceptions, recommittal, decree. *Error*, Whether error harmful.

Findings of fact made by the Industrial Accident Board in a workmen's compensation case must stand on appeal from a decree of the Superior Court if supported by evidence and not tainted by error of law. [155]

The propriety of the admission or exclusion of evidence by a single member of the Industrial Accident Board hearing a workmen's compensation case is not presented to either the Superior Court or this court unless raised by exception duly saved before the reviewing board. [156]

A decree awarding compensation in a workmen's compensation case was not supported by sufficient evidence of average weekly wages and must be reversed, and the case must be recommitted to the Industrial Accident Board for further hearing on that matter. [156–157]

A decree of the Superior Court in a workmen's compensation case should not attempt to affirm the decision of the Industrial Accident Board but should itself set forth appropriate provisions disposing of the case in accordance with the board's decision. [157]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Warner, J.*

*Edmund Z. Dymsza,* for the insurer.

*Bernard Kaplan, (Lester S. Cramer & John J. Grady* with him,) for the claimant.

RONAN, J. This is an appeal by an insurer in a workmen's compensation case.

We are concerned with the employee's activities for a period of approximately three weeks ending on January 25, 1953. During the first two weeks of this period he was engaged principally in snow removal work, at times by hand shovelling but usually by the operation of a snow loading machine. During the last week he operated a gasoline shovel and other equipment to excavate a trench for a sewer line. Since 1951 he had been employed in this type of work by one DeFilippo, an excavating contractor, who on many occasions furnished equipment and operators to the town of Dedham for snow removal purposes. The employee also worked a few days for the town during the first part of this period. On January 9, 1953, DeFilippo purchased a new snow loading machine which was operated by the employee for snow removal work even though for some seven or eight days after its purchase it lacked a cab to protect the operator. When the cab was finally added to this machine the seating arrangement was so cramped that the employee experienced difficulty in manipulating the controls, especially those on his left. On January 11, 1953, his left wrist began to swell and pain and he wore a wrist strap to alleviate this condition. Then his left arm began to swell. He quit work at noon time on January 24, 1953. The next day he consulted a physician who took him to a hospital where he was confined until March 8, 1953. There was medical testimony that during this three week period the employee suffered a myocardial infarction which, together with the condition of his wrist and arm, was causally connected with his employment. The reviewing board, after

amending the decision of the single member by adding thereto that the heart and arm conditions collectively constituted the personal injury which arose out of and in the course of his employment and totally incapacitated him for work on January 25, 1953, affirmed and adopted the findings of the single member.

The insurer challenges the accuracy of some of the findings of the single member which became findings of the board. It objects to the finding that the employee was a general laborer, especially in view of his claim that he had suffered an ailment of the heart. The fact is that the employee did some shovelling by hand for DeFilippo and also for the town, and there is nothing to show that it precipitated any heart attack. Notwithstanding the objection of the insurer, there was no error in finding that he at times worked long hours, for instance he quit work on January 7, 1953, after eleven o'clock at night, and on January 11 he commenced work at four o'clock in the morning and stopped after nine o'clock at night. That he worked in stormy and rainy weather is substantiated by his evidence and that of his wife. Indeed, there is no dispute that it was raining when he finally quit his employment on January 24, 1953. The record has been read with care and there is no need to examine similar objections. In workmen's compensation cases we do not reëxamine the record to see whether other or different findings of fact could be made if satisfied that those made are not lacking in evidentiary support and not tainted by an error of law. Where possible we sustain the findings of the single member and the reviewing board. *Griffin's Case*, 315 Mass. 71. *Sawyer's Case*, 315 Mass. 75. *Webb's Case*, 318 Mass. 357. *Williams's Case*, 333 Mass. 271.

Counsel for the employee offered two pamphlets in evidence, one entitled "Quick Way" and the other "Hough Payloader." They contained many illustrations and much commendatory matter concerning the great advantages to be derived from the use of a mechanical shovel. They were published by the manufacturer to advertise its product. The insurer objected to the admission of these two pam-

phlets. The employee was contending that for a number of days he had operated the machine without a cab and furthermore that the seating arrangement furnished the operator was so small that it caused him to be cramped up. There is no contention that the pamphlets did not fairly represent the mechanical shovel that the employee was operating in removing snow. There was nothing in the pamphlets prejudicial to the insurer. In any event, no exception was saved before the board.

The insurer next contends that there was error in the admission of a chapter in a medical book dealing with "Trauma in Relation to Coronary Thrombosis" which had been used by the employee's physician when he had testified at an earlier hearing before the same single member. So far as appears, the chapter added no more than what was already in evidence. Besides, the record does not show that the insurer insisted upon saving its exception taken before the single member in the subsequent stages of the proceeding before the reviewing board. *Phillips's Case,* 278 Mass. 194. *Di Clavio's Case,* 293 Mass. 259, 261. *Indrisano's Case,* 307 Mass. 520, 521. *Charron's Case,* 331 Mass. 519, 523.

The final decree lacked evidentiary support for the amount of the award. The reviewing board adopted the findings of the single member who reported that "neither party offered accurate evidence on this issue although the employee worked for some two years for the assured and on the scant evidence offered, I find that the employee had an average weekly wage of $85. If either party is aggrieved by this finding, opportunity will be afforded them to offer more accurate and competent evidence within one week following the receipt of this decision with respect to any modification of this finding." An examination of the evidence fails to show the average weekly wages as defined by G. L. (Ter. Ed.) c. 152, § 1 (1), as appearing in St. 1943, c. 529, § 1. The decree must be reversed and the case recommitted to the Industrial Accident Board for further hearing on the issue of average weekly wages, at which

hearing either party may offer additional evidence. *Snow's Case*, 252 Mass. 426. *McDermott's Case*, 283 Mass. 74.

The new decree when entered should set forth its provisions directly and categorically and not attempt to affirm the provisions of an administrative board. *Johnson's Case*, 242 Mass. 489.

*So ordered.*