The plaintiffs appeal from a Superior Court judgment dismissing their lawsuit against the commissioner of the Department of Developmental Services (commissioner or department). Concluding that (1) the plaintiffs have not pleaded sufficient facts to show the impairment of a constitutionally-protected liberty interest or a substantial injury, and (2) 115 Code Mass. Regs. §§ 5.05 (2009) and 5.13 (2011) are not unconstitutionally vague, we affirm.
1. Background. The plaintiffs are caregivers employed by the Judge Rotenberg Educational Center, Inc. (JRC), a private facility licensed by the department to provide services for developmentally disabled adults. On February 17, 2013, the plaintiffs were involved in an incident with a resident of the JRC that was later investigated by the department. By the time of that investigation, the JRC had already disciplined and retrained the plaintiffs.
The department investigator found numerous shortcomings on the part of the JRC. The investigator found that the narrow hallways of the residence and the placement of the resident's bedroom "put [the resident] and staff at unnecessary risk of harm." The investigator also found that the JRC had failed to keep the resident's individual habilitation plan up to date. The investigator questioned whether the residence was "even appropriate for [the resident's] needs." In light of these shortcomings, the investigator found that the plaintiffs should have ceased transporting the resident once she began actively struggling and that their failure to do so "exposed [the resident] to a serious risk of harm." Accordingly, the investigator found "sufficient evidence to substantiate mistreatment." Although the investigator and the resulting action plan recommended numerous remedial steps for the JRC, they did not recommend any remedial steps for the plaintiffs.
The plaintiffs appealed the finding of mistreatment to the commissioner, who affirmed the finding. The plaintiffs then filed a complaint in the Superior Court seeking, inter alia, judicial review and a declaratory judgment. A Superior Court judge dismissed the complaint under Mass.R.Civ.P. 12(b)(6), as amended, 365 Mass. 755 (1974), for failure to state a claim upon which relief can be granted.
2. Standard of review. "We review the denial of a motion to dismiss de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff[s'] favor." Edwards v. Commonwealth, 477 Mass. 254, 260 (2017). To survive a motion to dismiss, the plaintiffs must present factual allegations that rise above the level of speculation, see Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and plausibly suggest an entitlement to relief. See Flagg v. AliMed, Inc., 466 Mass. 23, 26 (2013). See also Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011) ("we look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief").
3. Due process claim. The Fourteenth Amendment to the United States Constitution does not recognize a person's reputation as a protected liberty interest, "unless 'a right or status previously recognized by state law [is] distinctly altered or extinguished.' " Vaccaro v. Vaccaro, 425 Mass. 153, 160 (1997) (Vaccaro ), quoting from Paul v. Davis, 424 U.S. 693, 711 (1976) (Paul ). In particular, stigma resulting from defamatory State action, standing alone, is not an actionable due process violation. Paul, 424 U.S. at 709. The Supreme Judicial Court has held that art. 12 of the Massachusetts Declaration of Rights similarly provides "no independent protection for an individual's reputation." Vaccaro, 425 Mass. at 161 n.9.[3]
Accordingly, the plaintiffs ultimately must show that the department's determination has the effect of altering or extinguishing their rights or status. The plaintiffs, however, do not sufficiently allege any change to their status or rights. Other than conclusory allegations, they plead no termination or other adverse employment decision, and the plaintiffs remained employed in the same position at the time they filed their complaint. The documents incorporated in their complaint reflect that the discipline of the plaintiffs preceded the department's determination.
Although it is uncontested that the department's findings are maintained in its electronic databases and in internal JRC records, the controlling statutory and regulatory scheme, including the Fair Information Practices Act, precludes the release of this information to employers and potential employers. See G. L. c. 66A, § 2(c ) ; 115 Code Mass. Regs. §§ 4.05 - 4.06 (2009), 9.19(1)(b) (2017). Accordingly, the plaintiffs' basic contention that the plaintiffs' future employment opportunities will be adversely affected does not rise above a speculative possibility. See Edwards, 477 Mass. at 265 (dismissing plaintiff's claim as "too speculative" where fact-finder would be required to "jump from one inference to another absent any of the necessary factual support"). In light of the "ample confidentiality procedures in place to protect the information in the system from general dissemination," the complaint shows no more than "a generalized fear of injury to [the plaintiffs'] reputation" insufficient to support a due process claim. Vaccaro, 425 Mass. at 161. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972) (no actionable stigma to support due process claim where State action did not foreclose employment opportunities). The judge properly dismissed the due process claim.
4. Certiorari. In this context, to obtain certiorari review, the plaintiffs are required to show, inter alia, "a substantial injury or injustice arising from the proceeding under review." New Bedford Educators Assn. v. Chairman of the Mass. Bd. of Elementary and Secondary Educ., 92 Mass. App. Ct. 99, 113 (2017), quoting from School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 576 (2007). Such a substantial injury may exist in the absence of the deprivation of a constitutional right, see Revere v. Massachusetts Gaming Commn., 476 Mass. 591, 603-604 (2017), but it may not lie where "the allegations are speculative and the damage alleged is generalized." Friedman v. Conservation Commn. of Edgartown, 62 Mass. App. Ct. 539, 545 (2004), quoting from Fiske v. Board of Selectmen of Hopkinton, 354 Mass. 269, 271 (1968). As with the due process claim, the plaintiffs' failure to plead, beyond conclusory allegations, any nonspeculative harm to their employment prospects is fatal to their certiorari claim. See Johnston v. Box, 453 Mass. 569, 583 (2009), quoting from All Seasons Servs., Inc. v. Commissioner of Health & Hosps. of Boston, 416 Mass. 269, 272 (1994) ("Courts are not required to grant motions to amend prior complaints where 'the proposed amendment ... is futile' ").
5. Constitutionality of regulations. A law is unconstitutionally vague "if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application,' " or if it otherwise "subjects people to an unascertainable standard." Chief of Police of Worcester v. Holden, 470 Mass. 845, 854 (2015), quoting from Caswell v. Licensing Commn. for Brockton, 387 Mass. 864, 873 (1983), and Brookline v. Commissioner of the Dept. of Envtl. Quality Engr., 387 Mass. 372, 378 (1986) (Brookline ). "While civil statutes are also subject to scrutiny for vagueness, '[t]he test is less strict when the law involves the regulation of business and economic activity and does not inhibit the exercise of constitutionally protected rights.' " Massachusetts Gen. Hosp. v. Commissioner of the Div. of Med. Assistance, 66 Mass. App. Ct. 485, 490 (2006) (Massachusetts Gen. Hosp.), quoting from Massachusetts Fedn. of Teachers, AFT, AFL-CIO v. Board of Educ., 436 Mass. 763, 780 (2002). "In addition, we recognize that 'the practical necessities of discharging the business of government inevitably limit the specificity with which [a regulatory agency] can spell out prohibitions.' " Massachusetts Gen Hosp., 66 Mass. App. Ct. at 490, quoting from Brookline, 387 Mass. at 378.
Under this standard, the challenged regulations provide an ascertainable standard. The general prohibition of mistreatment under 115 Code Mass. Regs. § 5.05 provides ten specific examples of proscribed conduct, and is neither unascertainable nor requires guesswork as to its meaning and application by persons of common intelligence. See Massachusetts Gen. Hosp., 66 Mass. App. Ct. at 490-491 (medical regulations providing "several sources of guidance" to assist interpretation, "a list of factors" to consider in application, and "concrete examples" of prohibited situations satisfied constitutional standards). Nor do the plaintiffs appear to question that the department may find mistreatment where caregivers fail to follow the relevant safety manual, thus creating a serious danger of an actively resisting resident falling on stairs; rather, they challenge the accuracy of those factual findings.
Likewise, as the plaintiffs pointed out to the department, for purposes of this case, 115 Code Mass. Regs. § 5.13 merely creates an exception to the emergency restraint requirements of 115 Code Mass. Regs. § 5.11 (2009). The department investigator substantiated only a violation of § 5.05. Nothing in § 5.13 provides an exception to the prohibition of mistreatment in § 5.05. Although the commissioner's discussion of § 5.11 and § 5.13, and her construction of the plaintiffs' argument regarding them, is hard to follow, § 5.13 itself provides ascertainable guidance, at least in the context of this case.
Judgment affirmed.

Contrary to the plaintiffs' suggestion, the Supreme Judicial Court did not overrule Vaccaro sub silentio in Doe v. Attorney Gen., 426 Mass. 136, 144 (1997) (Doe ). The court there held that a person adjudicated a sex offender had the right to challenge the constitutionality of the sex offender registry requirements. Doe, 426 Mass. at 143-144. To reach this conclusion, the court stated that it "need[ed] not decide ... that injury to reputation alone is a protected privacy interest under the due process provisions of the State Constitution."Id. at 144. Rather, the due process rights arose from the combination of "(1) the requirement that [the plaintiff] register with local police; (2) the disclosure of accumulated personal information on request; (3) the possible harm to his earning capacity; (4) the harm to his reputation; and most important, (5) the statutory branding of him as a public danger, a sex offender." Ibid. The fourth and arguably the third factors apply to the plaintiffs.